**UNITED STATES of America, Plaintiff,**

**v.**

**Duane B. McCASLIN, Defendant.**

**No. CR90–165WD.**

United States District Court,
W.D. Washington,
at Seattle.

Sept. 2, 1994.

Bonnie McNaughton, U.S. Atty., Seattle, WA, Scott Ray, Washington, DC, for plaintiff.

Jeffrey Steinborn, Reba Weiss, Seattle, WA, for defendant.

### ORDER ON MOTION TO VACATE CONVICTION AND SENTENCE UNDER 28 U.S.C. § 2255

DWYER, District Judge.

### I. INTRODUCTION

Defendant Duane B. McCaslin moves to vacate his conviction and sentence under 28 U.S.C. § 2255, which provides:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

■ Although McCaslin has served his prison term, he is still on supervised release, and therefore has standing to bring the motion. *Fraley v. United States Bureau of Prisons*, 1 F.3d 924 (9th Cir.1993). He contends that he was convicted and sentenced in violation of the Double Jeopardy Clause, which provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb; ...." U.S. Const., Amdt. 5.

The heart of McCaslin's argument is that his right not to be placed twice in jeopardy was violated when he was tried and sentenced after the government had completed a forfeiture of his residential real property pursuant to 21 U.S.C. § 881(a)(7). That section provides for the forfeiture to the United States of any real property "used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of" certain drug laws. McCaslin's pretrial motion for dismissal was denied and he was convicted in 1991 of manufacturing marijuana, possessing marijuana with intent to distribute it, and maintaining a residence for the purpose of manufacturing marijuana. Dkt. # 109. He was sentenced to fifteen months' imprisonment to be followed by three years of supervised release. Dkt. # 104. In the present motion McCaslin re-

lies upon *Austin v. United States*, —— U.S. ——, ——, 113 S.Ct. 2801, 2812, 125 L.Ed.2d 488 (1993), where the Supreme Court held that a forfeiture under 21 U.S.C. § 881(a)(7) constitutes a punishment and is therefore subject to the limitations of the Eighth Amendment's Excessive Fines Clause. It follows from *Austin*, defendant argues, that his second punishment—the criminal sentence—was imposed in violation of the Double Jeopardy Clause.

All materials filed, and the arguments of counsel presented in open court on July 20, 1994, have been fully considered.

### II. SCOPE OF DOUBLE JEOPARDY PROTECTION

■ The Double Jeopardy Clause "represents a fundamental ideal in our constitutional heritage." *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969). It protects against a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). The Clause is not limited to "life or limb" sanctions; it applies to imprisonment and monetary penalties as well. *See, e.g., United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989); *Ex Parte Lange*, 18 Wall. 163, 21 L.Ed. 872 (1874). Multiple punishments are permissible if imposed in the same proceeding; they are barred if imposed in separate proceedings. *Halper*, 490 U.S. at 450–51, 109 S.Ct. at 1902–03; *Missouri v. Hunter*, 459 U.S. 359, 368–69, 103 S.Ct. 673, 679–80, 74 L.Ed.2d 535 (1983).

### III. FORFEITURE OF PROPERTY UNDER 21 U.S.C. § 881(a)(7) AS PUNISHMENT

■ The Supreme Court in *United States v. Halper, supra*, held that a civil sanction is a punishment for double jeopardy purposes to the extent that it "may not be fairly characterized as remedial, but only as a deterrent or retribution." The label "civil" attached to the penalty makes no difference. 490 U.S. at 448–49, 109 S.Ct. at 1902. Citing

*Halper,* this court in 1990 denied defendant McCaslin's pretrial motion for dismissal of his criminal prosecution on double jeopardy grounds, finding that the earlier forfeiture of his $30,000 net equity in real estate had been "clearly compensatory" and not punitive. Dkt. # 34. The Ninth Circuit affirmed on a different basis, i.e., that a civil forfeiture "is directed against the property and not at an individual" and therefore does not implicate the Double Jeopardy Clause. *United States v. McCaslin,* 959 F.2d 786, 788 (9th Cir.), cert. denied, —— U.S. ——, 113 S.Ct. 382, 121 L.Ed.2d 292 (1992).

The Supreme Court in *Austin,* decided in 1993, has invalidated both this court's and the Ninth Circuit's reasons for holding that the forfeiture was not a punishment. The Court pointed out that the forfeiture available to the government under 21 U.S.C. § 881(a)(7) extends to *any* real property, no matter how valuable, that is used to facilitate a specified drug offense. The statute and its legislative history show a Congressional intent to punish and deter; there is an exception for innocent property owners; and there is no statutory link between the amount forfeited and any compensable injury to the government. Accordingly, the *Austin* Court held:

> In light of the historical understanding of forfeiture as punishment, the clear focus of §§ 881(a)(4) and (a)(7) on the culpability of the owner, and the evidence that Congress understood those provisions as serving to deter and to punish, we cannot conclude that forfeiture under §§ 881(a)(4) and (a)(7) serves solely a remedial purpose. We therefore conclude that forfeiture under these provisions constitutes "payment to a sovereign as punishment for some offense," *Browning–Ferris [Industries v. Kelco Disposal, Inc.],* 492 U.S. [257] at 265, 109 S.Ct. [2909] at 2915 [106 L.Ed.2d 219 (1989) ], and, as such, is subject to the limitations of the Eighth Amendment's Excessive Fines Clause.

—— U.S. at ——, 113 S.Ct. at 2812.

Even if the value of the property forfeited happens to be the same as or less than the government's costs of prosecution, the forfei-ture is still categorized as a punishment because the relationship is accidental:

> The value of the conveyances and real property forfeitable under §§ 881(a)(4) and (a)(7), on the other hand, can vary so dramatically that any relationship between the Government's actual costs and the amount of the sanction is merely coincidental.

*Id.* at —— n. 14, 113 S.Ct. at 2812 n. 14.

The government relies upon cases finding other civil sanctions not to be "punishments" because they were remedial under the *Halper* test. For example, in *United States v. Newby,* 11 F.3d 1143, 1145 (3rd Cir.1993), the court held that prison disciplinary sanctions were not "so grossly unrelated to prison authorities' remedial goal so as to constitute a 'punishment' within the meaning of the Double Jeopardy Clause." In *United States v. Tilley,* 18 F.3d 295, 300 (5th Cir.1994), the court distinguished *Austin* on the basis that "the forfeiture of *drug proceeds* [under § 881(a)(6) ] will always be ... roughly proportional to the harm inflicted upon government and society by the drug sale." (Emphasis added.) But such cases are inapplicable here. The present case involves not prison discipline or drug proceeds but residential real property forfeited under 21 U.S.C. § 881(a)(7); and *Austin* holds that such a forfeiture is a punishment of the claimant property-owner regardless of the value of the property taken. *See United States v. Ripinsky,* 20 F.3d 359, 363 n. 5 (9th Cir.1994).

While the *Austin* decision arose under the Excessive Fines Clause, it compels the conclusion that a § 881(a)(7) forfeiture is also a punishment under the Double Jeopardy Clause. In *Dept. of Revenue v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), the Supreme Court held that a state tax imposed upon persons convicted of marijuana-growing amounted to a second punishment barred by the Double Jeopardy Clause. *Kurth Ranch* makes clear that the *Austin* analysis of what constitutes a punishment applies as well under the Double Jeopardy Clause: "A defendant convicted and punished for an offense may not have a nonremedial civil penalty imposed against him for the same offense in a separate proceeding." *Id.* —— U.S. at ——, 114 S.Ct. at

1945; *see also United States v. Torres,* 28 F.3d 1463 (7th Cir. (Ill.1994)); *State v. 1979 Cadillac Deville,* 632 So.2d 1221 (La.App. 1994).

## IV.  SAME OFFENSE

■ There is no doubt that McCaslin was subjected to the forfeiture of his residential property, and then to criminal sanctions, as punishments for the same offense.  To obtain forfeiture the government had to prove that the property was used "to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment...."  21 U.S.C. § 881(a)(7).  The offenses relied upon for the forfeiture were the same ones that appeared in the indictment.  In its complaint seeking forfeiture the government alleged:

> Beginning at least in or about August 1989, and continuing at least until September 26, 1989, in the State of Washington and within the Western District of Washington, the above-described *defendant real property was used* and has repeatedly been used to commit or facilitate the commission of felony drug offenses, to wit, the illegal *manufacture* and *distribution* of marijuana and *conspiracy* to commit said offenses, in violation of 21 U.S.C. § 841, *et seq.,....*

*United States v. Real Property Identified as 21234 S.E. 21st Street, Kent, Washington,* No. C89–1435R (W.D.Wash.) (Dkt. # 1, p. 2; emphasis added).

The later indictment charged McCaslin with the same offenses, omitting conspiracy: manufacturing marijuana (Count 1), possessing it with intent to distribute (Count 2), and maintaining a residence for the purpose of manufacturing it (Count 3).  Dkt. # 5.  Each of these offenses was, under 21 U.S.C. § 881(a)(7), "a violation of this subchapter punishable by more than one year's imprisonment"; each required the same elements of proof as its counterpart in the forfeiture case.  *See United States v. Dixon,* —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993); *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

The Supreme Court has cast aside the fiction that the property rather than its owner is the offender.  *Austin,* —— U.S. at ——, 113 S.Ct. at 2808.

Here, as in *United States v. Tilley,* 18 F.3d at 297,

> if the prior civil forfeiture proceeding, which was predicated on the same drug trafficking offenses as charged in the indictment, constituted a "punishment," the Double Jeopardy Clause will bar the pending criminal trial.

## V.  SEPARATE PROCEEDINGS

■ The following was the sequence of events in this case and the related forfeiture case:

On September 26, 1989, a search warrant directed to McCaslin's real property was issued.  The warrant was executed the same day and a marijuana grow was found.

On September 27, 1989, a civil forfeiture complaint was filed.  The case was assigned to Chief Judge Rothstein as Cause No. C89–1435R.

On June 1, 1990, a criminal complaint was filed charging defendant with manufacturing one hundred or more marijuana plants, and a warrant for McCaslin's arrest was issued.

On June 4, 1990, McCaslin was arrested pursuant to the warrant, appeared in court, and posted a $25,000 appearance bond.

On June 14, 1990, a proposed consent judgment in the forfeiture action was filed by the parties; McCaslin, as claimant-owner, agreed to forfeit his interest in the real property.

On June 20, 1990, a grand jury returned a three-count indictment charging McCaslin with the marijuana offenses of which he was eventually convicted.  The case was assigned to Judge Dwyer as Cause No. CR90–165WD.

On June 27, 1990, the consent judgment in the forfeiture action was approved by the court.

On August 8, 1990, McCaslin moved to dismiss the criminal indictment on double jeopardy grounds.

On October 1, 1990, the district court denied the motion to dismiss.

On December 4, 1990, McCaslin entered a conditional guilty plea to Count 3 (maintaining a residence for the purpose of manufacturing marijuana), preserving his right to seek appellate review of the double jeopardy ruling.

On July 10, 1991, McCaslin was convicted on Counts 1 and 2 (manufacture and possession) following a bench trial.

The sentencing and review by the Court of Appeals followed.

Thus, the indictment was returned more than eight months after the forfeiture action was started; the two cases overlapped by only a week and were handled by different judges; and the forfeiture became final through a consent judgment about five months before defendant pleaded guilty to Count 3 and more than a year before he was convicted on Counts 1 and 2. The government argues that since the cases arose from the same investigation, and overlapped briefly, they should be deemed a single proceeding. Defendant contends that the two cases, having been separately filed and separately concluded months apart, must be deemed two proceedings.

In *Kurth Ranch, supra,* the Supreme Court considered the double jeopardy consequences of a state's having first convicted and sentenced the defendants and having then imposed upon them a punitive tax for the same conduct. The two cases were started about six weeks apart, pursued simultaneously for a few months, and concluded separately, the criminal matter being resolved first. The Court said of the Montana tax statute:

> Nor does the statute require us to comment on the possibility of "multiple punishments" imposed in the same proceeding [citations omitted], since it involves separate sanctions imposed in successive proceedings.

—— U.S. at —— n. 21, 114 S.Ct. at 1947 n. 21.

Although the quoted statement was made without elaboration, it amounts to a holding that a civil action aimed at exacting a penalty, and a criminal prosecution directed to the same offense, even when filed close in time, constitute two proceedings when pursued in separate cases and concluded at different times.

The government relies upon *United States v. Millan,* 2 F.3d 17 (2d Cir.1993), *cert. denied, Bottone v. United States,* —— U.S. ——, 114 S.Ct. 922, 127 L.Ed.2d 215 (1994), and *United States v. One Single Family Residence,* 13 F.3d 1493 (11th Cir.1994), decided before *Kurth Ranch,* each holding that civil forfeiture and criminal cases pursued as part of a coordinated enforcement effort amounted to a single proceeding for double jeopardy purposes. Those cases have been undercut by *Kurth Ranch,* at least where one case is completed and reduced to judgment while the other is still pending. As the Seventh Circuit stated in *Torres:*

> [I]f as *Kurth Ranch* holds a civil proceeding to collect a monetary penalty for crime counts as an independent "jeopardy," it does not require much imagination to see the problem. Civil and criminal proceedings are not only docketed separately but also tried separately, and under the double jeopardy clause separate trials are anathema.
>
> Suppose the civil forfeiture gets to trial first. The United States will try to show that the money was used in an illegal drug transaction. 21 U.S.C. § 881(a)(6). At the beginning of the hearing, when evidence is first presented to the trier of fact in a proceeding seeking to impose a penalty for crime, jeopardy "attaches." See *Crist v. Bretz,* 437 U.S. 28, 32–36 [98 S.Ct. 2156, 57 L.Ed.2d 24] (1978). At the end of the proceeding, the trier of fact makes appropriate findings and either forfeits the property or concludes that the claimant didn't do it or has some statutory defense. Come the criminal trial, the accused can plead former jeopardy-former conviction (and punishment) on the one hand, former acquittal on the other.... Separate administrative and criminal proceedings can lead to two trials, each of which produces a punishment for a single offense. Two trials, even if close in time, are still double

jeopardy.[1]

28 F.3d at 1465.

■ *Millan* and *One Single Family Residence* also relied upon the absence of any showing "that the government acted abusively by seeking a second punishment because of dissatisfaction with the punishment levied in the first action." *United States v. One Single Family Residence*, 13 F.3d 1493, 1499 (11th Cir.1994). But the prosecutor's state of mind cannot determine whether a defendant has been placed twice in jeopardy. In a jury case, for example, jeopardy attaches when the jury is sworn (*see Crist v. Bretz*, 437 U.S. 28, 35, 98 S.Ct. 2156, 2160, 57 L.Ed.2d 24 (1978))—before the prosecutor has occasion to feel "dissatisfaction" with the sentence.

■ It also makes no difference that the forfeiture action here was resolved by a consent judgment rather than by trial. Jeopardy is complete—i.e., the constitutional bar against a second punishment for the same offense arises—when a judgment based on a guilty plea or an agreed resolution of the case is entered. A contested trial is not necessary. *See Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1942.

## VI. THE *TEAGUE* AND WAIVER ARGUMENTS

■ It follows from the foregoing that McCaslin was unconstitutionally subjected to a second punishment for the same offense, in a separate proceeding, when he was convicted and sentenced to prison several months after the government had forfeited his residential real estate under § 881(a)(7). The government, citing *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), argues that McCaslin should have no relief because *Austin* announced a "new constitutional rule" that should apply only to cases that become final after the rule is announced.

The *Teague* principle of nonretroactivity has been summarized as follows:

With two exceptions, a prisoner may not seek to enforce a "new rule" of law in federal habeas corpus proceedings if the new rule was announced after the petitioner's conviction became "final".... The first exception permits retroactive application of new rules that "place[ ] 'certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe,'" including "rules forbidding criminal punishment of certain primary conduct [and] ... rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." The second exception permits retroactive application of new rules that "require[ ] the observance of 'those procedures that ... are 'implicit in the concept of ordered liberty.'"

J.S. Liebman and R. Hertz, *Federal Habeas Corpus Practice and Procedure*, 1993 Cum. Supp. § 22A.1, pp. 212–13.

A "new rule" is defined as follows:

In general, ... a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.

*Teague*, 489 U.S. at 301, 109 S.Ct. at 1070 (emphasis in original; citations omitted).

It is unclear whether *Teague* would apply in any event to motions brought by federal prisoners under 28 U.S.C. § 2255, as distinguished from state-prisoner habeas corpus proceedings (*see* Liebman and Hertz, *supra,* at § 22A.6), but that issue need not be decided here because the *Austin* case did not announce a "new rule" of constitutional law.

For more than a century it has been clear that the government must forgo multiple punishments in separate proceedings. The Supreme Court so held in 1874, stating:

[W]e do not doubt that the Constitution was designed as much to prevent the criminal from being twice punished for the

---

**1.** In *Torres* the forfeiture was held not to be a punishment because the criminal defendant had failed to file a claim in the forfeiture case: "As a non-party, Torres was not at risk in the forfeiture

proceeding...." *Id.* 28 F.3d at 1465. That is not the situation here, since McCaslin filed and adjudicated a claim to his residence.

same offence as from being twice tried for it.

*Ex Parte Lange,* 18 Wall. at 169–73. In *Halper,* decided in 1989, the Court said that

a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand that term.

490 U.S. at 448, 109 S.Ct. at 1902. The *Austin* Court, four years after *Halper,* emphasized that its holding *was* dictated by precedent developed over many years:

[F]orfeiture proceedings historically have been understood as imposing punishment despite their *in rem* nature.

\* \* \* \* \* \*

We conclude, therefore, that forfeiture generally and statutory *in rem* forfeiture in particular historically have been understood, at least in part, as punishment.

\* \* \* \* \* \*

In light of the historical understanding of forfeiture as punishment. . . .

— U.S. at — n. 9, ——, ——, 113 S.Ct. at 2809 n. 9, 2810, 2812.

*Austin* and *Halper,* taken together, establish that a property forfeiture under 21 U.S.C. § 881(a)(7) is a punishment for double jeopardy purposes. This is not a "new rule" within the meaning of *Teague* but, rather, the application of an old rule in a new factual context. *See* Liebman and Hertz, *supra,* at § 22A.5, p. 267, *citing United States v. Johnson,* 457 U.S. 537, 547, 102 S.Ct. 2579, 2585–86, 73 L.Ed.2d 202 (1982). Since no "new rule" is involved, it is unnecessary to consider the other reasons urged for *Teague*'s inapplicability.

■ The government also argues that McCaslin waived his double jeopardy claim when he entered into a consent judgment in the forfeiture case. Nothing in the record suggests, however, that McCaslin relinquished his rights under the Double Jeopardy Clause at any point.

## VII. THE REMEDY

■ Justice Scalia, dissenting in *Kurth Ranch,* observed:

In the present case, as in *Halper* itself, we confront the relatively easy task of disallowing a *civil* sanction because *criminal* punishment has already been imposed. But many cases, including one being held for this case, will demand much more of us: disallowing *criminal* punishment because a *civil* sanction has already been imposed.

— U.S. at ——, 114 S.Ct. at 1958 (emphasis in original). That question, which the *Kurth Ranch* majority noted was not presented for decision (*id.* at —— n. 21, 114 S.Ct. 1947 n. 21), is now raised here.

When two successive punishments for the same offense cannot stand, intuition may suggest that the forfeiture rather than the prison sentence should yield—i.e., that the criminal sanction should be upheld and the defendant reimbursed for the loss of his property. But the law of double jeopardy, as laid down by the higher federal courts, does not permit that solution. The second punishment, not the first, must be held invalid. As the Fifth Circuit has stated:

Regardless of the order of the civil and criminal proceedings, the Double Jeopardy Clause will bar the second sanction if both the first and second sanctions are deemed punishment. *United States v. Sanchez–Escareno,* 950 F.2d 193, 200 (5th Cir.1991), *cert. denied,* — U.S. ——, 113 S.Ct. 123, 121 L.Ed.2d 78 (1992).

*Tilley,* 18 F.3d at 298 n. 5.

And as Justice Scalia stated in *Kurth Ranch,* — U.S. at ——, 114 S.Ct. at 1958: "[I]f there is a constitutional prohibition on multiple punishments, the order of punishment cannot possibly make any difference."

Thus the remedy must be to grant McCaslin's section 2255 motion and vacate the second sanction imposed.

■ Although his motion is entitled "Motion to Vacate Sentence," McCaslin in his supporting papers (e.g., at Dkt. # 119, p. 16) asks that his conviction as well as his sentence be vacated. Both conviction and sentence are vacated in cases where a second

prosecution violated the Double Jeopardy Clause (*see, e.g., Benton v. Maryland*, 395 U.S. at 797–98, 89 S.Ct. at 2064 (1969); *United States v. Neal*, 27 F.3d 1035, 1054 (5th Cir.1994)), and the result must be the same where an earlier punishment, rather than an earlier verdict, bars a further penal sanction. As noted in *Tilley*, 18 F.3d at 297, a forfeiture that amounts to a punishment "will bar the [later] criminal trial."

## VIII. THE PRACTICAL SOLUTION FOR OTHER CASES

While the present motion must be granted, there is nothing to prevent prosecutors from seeking multiple punishments authorized by law, provided they do so in the same case. As the *Torres* court stated, "The United States would do well to seek imprisonment, fines, and forfeiture in one proceeding." 28 F.3d at 1464. Forfeitures as criminal sanctions are provided for by law. *E.g.,* 21 U.S.C. § 853. The single-proceeding approach is now followed in this district and elsewhere, as illustrated by a recent indictment received in evidence at the July 20 hearing. The government can seek in the criminal case to forfeit the defendant's interest in the property, while also pursuing a civil action *in rem* to extinguish the claims of any persons who are not criminally charged. *See Torres*, 28 F.3d at 146. When that is done there is no double jeopardy problem. There is also a further gain for the cause of justice: with all remedies being considered in the same case, the sentencing judge can take the forfeiture into account in deciding whether, and in what amount, to impose a fine. *See United States v. Crook*, 9 F.3d 1422, 1426 (9th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1841, 128 L.Ed.2d 467 (1994) (under sentencing guidelines court may consider forfeiture in determining fine).

## IX. CONCLUSION AND ORDER

For the reasons stated, defendant's criminal sentence, imposed in a separate proceeding more than a year after judgment was entered forfeiting his residential real property under 21 U.S.C. § 881(a)(7), constituted a second punishment for the same offense in

violation of the Double Jeopardy Clause. Defendant's motion under 28 U.S.C. § 2255 is therefore granted, and his conviction and sentence are vacated.